*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0021p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROBERT W. STOCKER, II and LAUREL A.
STOCKER,

                    *Plaintiffs-Appellants*,

      *v.*

UNITED STATES OF AMERICA,

                    *Defendant-Appellee.*

No. 11-1890

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:09-cv-955—Robert Holmes Bell, District Judge.

Decided and Filed: January 17, 2013

Before: BATCHELDER, Chief Circuit Judge; COLE, Circuit Judge; ROSEN, Chief
District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** James F. Mauro, Jeffery V. Stuckey, Michael J. Pattwell, DICKINSON
WRIGHT PLLC, Lansing, Michigan, for Appellants. Tamara W. Ashford, Richard
Farber, Carol Barthel, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee.

_____

## OPINION

_____

ROSEN, Chief District Judge.

---

[*]The Honorable Gerald E. Rosen, Chief United States District Judge for the Eastern District of
Michigan, sitting by designation.

## I. <u>INTRODUCTION</u>

This case truly presents a "$64,000 Question"[1] — namely, what sort of proof the Plaintiff/Appellant taxpayers, Robert W. Stocker, II and Laurel A. Stocker (the Stockers), may introduce in order to demonstrate the timely filing of a tax return in which they sought a federal tax refund of just over $64,000. The Internal Revenue Service (IRS) denied this claim for a refund on the ground that the Stockers failed to file their amended 2003 federal tax return within the statutory three-year period for amending a return. The Stockers then brought this suit challenging the IRS's denial of their claim, but the district court dismissed the case for lack of subject matter jurisdiction, finding that the Stockers could not establish the jurisdictional prerequisite of a timely-filed tax return under any of the methods recognized in the Internal Revenue Code or this Circuit's precedents for determining the date of delivery of a federal tax return.

On appeal, the Stockers contend that the decisions relied upon by the district court are distinguishable, and that the pertinent tax code provisions and case law leave room for proof of timely mailing of a tax return through taxpayer testimony and circumstantial evidence. We conclude that the district court properly construed our precedents, and we therefore AFFIRM the dismissal of this action for lack of subject matter jurisdiction.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A.     The Stockers' Alleged Overpayment of Taxes

This suit arises from the claim of Plaintiffs/Appellants Robert W. Stocker, II and Laurel A. Stocker that they overpaid their federal taxes for the 2003 tax year. After securing two extensions, the Stockers filed their initial 2003 federal income tax return on October 15, 2004. A few years later, in March of 2007, the IRS settled an audit of

---

[1] For the benefit of our younger readers, "The $64,000 Question" was one of the earliest and most popular of the television game shows broadcast in the 1950s. It became embroiled in the game show scandals of the late 1950s, and was cancelled in 1958.

Windward Communications II, a "flow-through entity" in which the Stockers had invested and lost money. In light of this development, the certified public accountant who prepared the Stockers' tax returns, Michael Flintoff, determined that the Stockers had overpaid their 2003 federal taxes in the amount of $64,058.00.

**B.      The Preparation and Mailing of the Stockers' Amended 2003 Return**

To assist the Stockers in securing the refund he believed they were owed, Mr. Flintoff prepared an amended 2003 federal tax return for Mr. Stocker to mail. He also prepared an amended state return for the 2003 tax year, as well as the Stockers' 2006 federal and state tax returns. Each of these returns was due on October 15, 2007, with the Stockers having secured an extension of the due date for their 2006 returns, and with federal law dictating that any claim for a refund of the Stockers' 2003 taxes had to be filed within three years of the October 15, 2004 filing of their initial 2003 return. *See* 26 U.S.C. § 6511(a).

On October 15, 2007, Mr. Flintoff's office manager, Karrin Fennell, prepared postage prepaid, certified mail, return receipt requested envelopes for the Stockers' amended 2003 federal and state tax returns, as well as ordinary postage prepaid envelopes for the Stockers' 2006 federal and state returns. Mr. Stocker drove to his tax preparer's office that afternoon to collect and sign the 2003 and 2006 returns, and was advised by both Mr. Flintoff and Ms. Fennell that all four returns were due and had to be mailed that same day. Ms. Fennell, however, mistakenly retained the customer copies of the certified mail receipts for the Stockers' 2003 amended returns, rather than giving these copies to Mr. Stocker so that he could present them at the post office as he mailed the returns.

Mr. Stocker testified that upon receiving the four tax returns and accompanying envelopes, he proceeded to the post office and timely mailed all four returns on the day he received them, October 15, 2007. By using certified mail for the 2003 amended returns, Mr. Stocker ordinarily would have been able to obtain date-stamped receipts from the post office reflecting that he mailed the returns that day. He explained, however, that he was unable to get any such date-stamped receipts, due to Ms. Fennell's

failure to give him the customer copies of the certified mail receipts while he was at his tax preparer's office.

The record discloses that the Stockers' amended 2003 state tax return and 2006 state return were timely received by the Michigan Department of Treasury, and the Stockers received the refund sought in their amended 2003 state return. In addition, the IRS has acknowledged the timely receipt of the Stockers' 2006 federal tax return. As for the Stockers' amended 2003 federal tax return, however, the IRS claims that it did not receive this return until October 25, 2007, ten days after the date Mr. Stocker testified that he mailed the return. In addition, the agency's records reflect that the envelope containing the Stockers' amended 2003 federal return bore a postmark date of October 19, 2007.[2] The IRS concedes, however, that it did not retain the envelope in which the Stockers' amended 2003 return was sent. Moreover, although the Stockers requested a return receipt when they mailed their amended 2003 federal return, the portion of the return-receipt card that is to be completed by the recipient upon delivery was left blank when it was returned to the Stockers' tax preparer. (*See* Certified Mail Receipt, R.22-3, Page ID# 239.)

## C.      The IRS's Rejection of the Stockers' Claim for a Refund

On November 27, 2007, the IRS sent the Stockers a notice disallowing the refund claimed in their amended 2003 federal tax return, citing the return's untimely postmark past the October 15, 2007 deadline. On June 23, 2008, Mr. Flintoff submitted a written request for the IRS to reconsider its rejection of the Stockers' claim for a refund, but the IRS denied this request on September 26, 2008.

---

[2] An IRS representative, Ericka Watford, testified that the postmark date and date of receipt as reflected in the agency's records are derived from dates that were stamped onto the face of the Stockers' amended 2003 return by a clerk who is responsible for opening and sorting returns. The amended return, for example, bears a stamp stating "ENVELOPE POST MARKED OCT 19 2007." (Form 1040X, Amended 2003 Federal Tax Return, R.26-4, Page ID# 291.)

**D.      Procedural History**

The Stockers commenced this action on October 15, 2009, challenging the IRS's denial of their request for a refund of a portion of their 2003 federal tax payment. In their complaint, the Stockers alleged that their amended 2003 federal return was timely filed on October 15, 2007. The Government answered by denying that the Stockers' amended 2003 return was timely filed, and it asserted the three-year statute of limitations codified at 26 U.S.C. § 6511 as an affirmative defense.

The Stockers later moved for summary judgment, arguing that their amended 2003 federal tax return was properly mailed on October 15, 2007. In support of this contention, the Stockers pointed to evidence in the record reflecting the timely mailing of their amended 2003 return, including the testimony of Mr. Stocker and the evidence that the other three returns mailed contemporaneously with the amended 2003 federal return were deemed by the federal and state taxing authorities to be timely sent and received. The Stockers also requested that the district court draw an adverse inference of timely filing against the Government as a spoliation sanction, in light of the IRS's failure to retain the postmarked envelope in which the Stockers had mailed their amended 2003 return.

The Government opposed the Stockers' motion, and also moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (2), arguing that the district court lacked subject matter jurisdiction and that the Stockers' suit was barred by sovereign immunity due to the Stockers' failure to file their amended 2003 return within the three-year period for doing so. The district court agreed with the Government and held that it lacked jurisdiction over the case, and it therefore denied the Stockers' summary judgment motion as moot. This appeal followed.

## III. <u>ANALYSIS</u>

### A.       The Standards Governing This Appeal

We review *de novo* the district court's dismissal of the Stockers' complaint for lack of subject matter jurisdiction. *See Wagenknecht v. United States,* 533 F.3d 412, 415 (6th Cir. 2008).  In this case, the existence of subject matter jurisdiction turns upon whether the Stockers can show that they filed their amended 2003 federal tax return within three years of the October 15, 2004 filing date of their original 2003 return. *See* 26 U.S.C. § 6511(a); *see also Thomas v. United States,* 166 F.3d 825, 828-29 (6th Cir. 1999) (recognizing that the timely filing of an administrative claim is a jurisdictional prerequisite to a suit for a refund); *Miller v. United States,* 784 F.2d 728, 729 (6th Cir. 1986) (holding that the taxpayer bears the burden of establishing this jurisdictional prerequisite).  Thus, the federal courts may exercise subject matter jurisdiction over this suit only if the Stockers can establish, through some accepted means, that they filed their amended 2003 return within this three-year statutory period, or by October 15, 2007.  Accordingly, we now turn to this question.

### B.       The District Court Properly Concluded That the Stockers Failed to Produce Cognizable Evidence of the Timely Filing of Their 2003 Amended Return.

Under well-established and familiar principles of sovereign immunity, the United States may not be sued without its consent, and the terms of this consent define the jurisdiction of the courts to entertain a suit against the Government. *See United States v. Testan,* 424 U.S. 392, 399 (1976).  In this case, the pertinent expression of the Government's consent to be sued is found at 28 U.S.C. § 1346(a)(1), which vests jurisdiction in the federal district courts to hear suits "against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected."  This waiver of sovereign immunity is limited, however, by an Internal Revenue Code provision mandating that no such suit may be brought "until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard."  26 U.S.C. § 7422(a).

Here, in determining whether the Stockers satisfied this jurisdictional requirement of a "duly filed" claim, the dispositive question is whether they timely filed their claim for a refund of a portion of their 2003 federal tax payment "within 3 years from the time [their original 2003] return was filed." 26 U.S.C. § 6511(a). As the Supreme Court has emphasized, "unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' may not be maintained in any court." *United States v. Dalm,* 494 U.S. 596, 602 (1990) (citing 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422(a)).

**1.     The Law Governing the Determination of the Filing Date of a Federal Tax Return**

In order to decide whether the Stockers have established the jurisdictional prerequisite of a timely filed claim for a refund, we first must survey the law that determines the date upon which a federal tax return is deemed to be filed. As we explained in *Miller,* the courts initially determined the date of a tax filing by resort to the "physical delivery rule," under which filing was "not complete until the document [wa]s delivered and received." 784 F.2d at 730 (internal quotation marks, footnote, and citation omitted). Over time, however, some courts "carved out an exception" to the physical delivery rule, under which proof of "timely and accurate mailing raise[d] a rebuttable presumption that the mailed material was received, and thereby filed." *Miller,* 784 F.2d at 730 (internal quotation marks and citation omitted).

Against this backdrop, Congress enacted an Internal Revenue Code provision that established two statutory exceptions to the common-law physical delivery rule. First, a return or other document that is "delivered by United States mail" to the IRS is deemed to have been delivered — and hence filed, under the physical delivery rule — on "the date of the United States postmark stamped on the cover" of this mailing. 26 U.S.C. § 7502(a)(1). Next, if a return or other document "is sent by United States registered mail," this registration "shall be prima facie evidence that the return . . . or

other document was delivered" to the IRS, and "the date of registration shall be deemed the postmark date." 26 U.S.C. § 7502(c)(1).[3]

**2.      The Stockers Cannot Establish the Timely Filing of Their Amended 2003 Return Through the Means Set Forth in § 7502, Nor Through Any Other Method of Proof Recognized Under the Law of This Circuit.**

Returning to the facts of the present case, it is immediately apparent that neither of the two above-cited statutory exceptions to the physical delivery rule can assist the Stockers in their effort to demonstrate the timely filing of their amended 2003 federal tax return. First, the Stockers cannot show that the envelope in which they mailed this amended return bore a postmark date of October 15, 2007 or earlier, as necessary to establish timely delivery under § 7502(a)(1). Instead, the IRS's records indicate that the envelope containing the Stockers' amended return was postmarked October 19, 2007, four days after the due date.[4] Next, while the Stockers state that they sent their amended return by certified mail, they failed to secure a date-stamped receipt that would corroborate their assertion that they timely delivered this return to the post office on October 15, 2007. Thus, they cannot avail themselves of § 7502(c)(2) and its corresponding administrative regulation, 26 C.F.R. § 301.7502-1(c)(2), under which a document sent by certified mail is deemed to be filed on the date stamped on the sender's receipt by the postal employee to whom the document is presented.

Nonetheless, the Stockers insist that the two methods set forth in § 7502 for establishing timely filing are not the sole avenues of proof for overcoming the physical delivery rule, and that taxpayers remain free to prove timely filing through other means.

---

[3]Under § 7502(c)(2), the Secretary of the Treasury is "authorized to provide by regulations the extent to which" the provision governing registered mail also applies to certified mail. A regulation adopted pursuant to this authority provides that if a document "is sent by U.S. certified mail and the sender's receipt is postmarked by the postal employee to whom the document . . . is presented, the date of the U.S. postmark on the receipt is treated as the postmark date of the document." 26 C.F.R. § 301.7502-1(c)(2). As explained in this regulation, "the risk that the document . . . will not be postmarked on the day that it is deposited in the mail may be eliminated by the use of registered or certified mail." *Id.*

[4]As noted earlier, the IRS failed to retain the envelope in which the Stockers sent their return, so there is no way to confirm the statement in the agency's records that this envelope had an October 19, 2007 postmark. The possible significance of this lost envelope is addressed below.

This contention, however, runs directly counter to our decision in *Miller,* in which we expressly held that "the only exceptions to the physical delivery rule available to taxpayers are the two set out in section 7502." 784 F.2d at 731. In that case, the plaintiff sought to rely on an affidavit from his attorney stating that he had timely sent a claim for a refund by ordinary mail, but the IRS had no record of ever receiving this claim. Because the plaintiff could not produce a postmarked envelope that could confirm the timely filing of his claim, and because this claim had been sent by ordinary rather than registered or certified mail, we found that "the exceptions in section 7502 do not apply to the filing of [the plaintiff's] refund claim." *Id.* at 730. We then rejected the plaintiff's contention that the two exceptions set forth in § 7502 merely created "safe harbor[s]" to which a taxpayer could appeal "without question, while not barring him from relying on other exceptions created by the courts." *Id.* Instead, we elected to follow the decisions of other courts holding that the "exceptions embodied in [§ 7502] [a]re exclusive and complete." *Id.* at 731 (following *Deutsch v. Comm'r,* 599 F.2d 44, 46 (2d Cir. 1979), and other cases cited therein).[5]

The Stockers seek to distinguish *Miller,* however, on the ground that the taxpayer's claim in that case was never received, whereas the postmarked envelope in which the Stockers sent their amended return ***was*** received by the IRS and then lost or destroyed. In support of this proposed distinction, the Stockers point to language in *Miller* which, in their view, operates to limit the ruling in that case to situations where the taxpayer's submission never reaches the IRS. In particular, the court in *Miller* construed the statutory "mailbox rule" set forth in § 7502(a)(1) as "appl[ying] only in cases where the document is actually received by the I.R.S. after the statutory period,"

---

[5]As noted by the Stockers, there is a circuit split on this issue, with other circuits having concluded that § 7502 does not altogether displace the common-law rules, such as the mailbox rule, that the courts have invoked to determine whether a tax return or other document has been timely filed with the IRS. *See, e.g., Philadelphia Marine Trade Ass'n — Int'l Longshoremen's Ass'n Pension Fund v. Comm'r,* 523 F.3d 140, 150 (3d Cir. 2008) (reasoning that Congress's intent in enacting § 7502 "was to supplement, not supplant, [the] means by which taxpayers can timely file documents with the IRS"); *Anderson v. United States,* 966 F.2d 487, 491 (9th Cir. 1992) ("[W]e decline to read section 7502 as carving out exclusive exceptions to the old common law physical delivery rule."). We, of course, are bound to adhere to this Circuit's resolution of this issue in the published *Miller* decision. *See Carroll v. Comm'r,* 71 F.3d 1228, 1232 (6th Cir. 1995) (expressing reservations about the ruling in *Miller* but confirming that it "remain[s] good law in the Sixth Circuit").

and it reasoned that the taxpayer in that case could not satisfy this statutory provision because his "claim was never *received* by the I.R.S." *Miller,* 784 F.2d at 730 (emphasis in original) (footnote omitted). Similarly, in a more recent decision that reaffirmed the ruling in *Miller,* we stated that § 7502(a)(1) "do[es] not apply to this case" because "[t]he IRS did not receive" the tax return at issue in that case. *Surowka v. United States,* 909 F.2d 148, 150-51 (6th Cir. 1990). It follows, according to the Stockers, that *Miller* and its progeny do not preclude a taxpayer from satisfying § 7502(a)(1) (or perhaps some related common-law rule) through extrinsic evidence in cases where the IRS ***did*** receive the tax return or claim at issue, and where the only question is whether this document was timely filed.

We see no principled basis for distinguishing *Miller* on this ground. In both *Miller* and this case, the plaintiff taxpayers were met with the objection that they could not bring suit for a refund because they had failed to timely file a claim with the IRS. In both cases, this purported absence of a timely filing — whether owing to late delivery to the IRS or to the IRS's failure to receive the claim at all — could only be rebutted through extrinsic evidence indicating that the taxpayer presented the claim to the post office for mailing on or before the pertinent deadline. If we did not allow this extrinsic evidence to rebut the IRS's claim of lack of receipt in *Miller,* we fail to see how we could consider such evidence here, based solely on the IRS's acknowledgment that it received the Stockers' amended return ten days late (and with a postmark four days after the filing deadline), rather than not at all.[6]

Indeed, it seems to us that this factual distinction from *Miller* cuts against the taxpayers here. As we explained in *Miller,* § 7502 is intended, at least primarily, to address cases in which a document reaches the IRS after a filing deadline. 784 F.2d at 730 & n.3; *see also Philadelphia Marine Trade Ass'n,* 523 F.3d at 149 (reasoning that "[b]y its terms, § 7502(a) applies only to cases where the pertinent document was delivered to the Government after the filing deadline"). Since this is precisely the

---

[6]There is, of course, the separate question whether the Government might be subject to an adverse inference of a timely postmark, as a sanction for the IRS's failure to preserve the envelope in which the Stockers sent their amended return. Again, we consider this matter below.

situation presented here, there is all the more reason for us to hold the Stockers to the terms of this statute and to insist that they meet the conditions imposed by Congress for excusing late delivery, rather than looking to judge-made rules that are intended to address different situations. *Compare, e.g., id.* at 149-152 (finding that the common-law mailbox rule should remain available where the "taxpayer does not need the protection of § 7502," but instead seeks to invoke a presumption of timely delivery of a claim mailed well in advance of a deadline). Because § 7502 addresses the very dilemma confronted by the Stockers here — namely, the need for an exception to the physical delivery rule that would overcome the admitted arrival of a document after a filing deadline — we conclude, in accordance with *Miller,* that the Stockers' failure to produce evidence that would satisfy either of this statute's two specified exceptions is fatal to their suit for a refund.[7]

Moreover, the Stockers' proposed basis for distinguishing *Miller* runs afoul of a prior (albeit unpublished) decision in which we applied *Miller* to a case involving late delivery of tax returns. In *Schentur v. United States,* No. 92-3605, 1993 WL 330640, at *1-2 (6th Cir. Aug. 30, 1993), the plaintiff taxpayers filed claims for refunds that were received by the IRS a year or more past the pertinent deadlines, and the IRS did not save the envelopes in which the plaintiffs submitted these claims. Although the plaintiffs offered affidavits from themselves, their secretary, and their accountant attesting that

---

[7]We pause to observe, as an aside, that there is nothing inherently more suspicious or less plausible about the IRS's claim in this case of a postmark after the filing deadline, as compared to the agency's claim in *Miller* that a document was never received. In either case, the claim cannot be verified. Indeed, this potential predicament is explicitly acknowledged in the regulatory counterpart to § 7502, which advises that "the risk that [a] document . . . will not be postmarked on the day that it is deposited in the mail may be eliminated by the use of registered or certified mail." 26 C.F.R. § 301.7502-1(c)(2). Accordingly, just as it is a recognized risk that mail might get lost in transport or that an IRS employee might inadvertently misplace a document upon its delivery to the agency, it is likewise a recognized risk that a postal employee might not postmark a document on the same day the taxpayer brings it to the post office. Section 7502(c) grants immunity from all of these risks through the use of registered or certified mail, but a taxpayer who uses ordinary mail and hopes to rely on § 7502(a)(1) is equally vulnerable to each of these risks. *See Carroll,* 71 F.3d at 1229 ("In this circuit, a taxpayer who sends a document to the IRS by regular mail, as opposed to registered or certified mail, does so at his peril.").

In this case, then, it is possible to credit the Stockers' extrinsic evidence that they delivered their amended 2003 tax return to the post office on October 15, 2007, while also crediting the statement in the IRS's records that the envelope in which the Stockers' return arrived at the agency bore a postmark date of October 19, 2007. Thus, while we find that *Miller* precludes us from considering the Stockers' extrinsic evidence that they brought their return to the post office on October 15, 2007, nothing in this mailing effort necessarily ensured that their return would bear an October 15, 2007 postmark, such that they could successfully invoke § 7502(a)(1) as establishing the timely filing of their return.

their tax returns were timely filed, we cited *Miller* as holding that § 7502 defines the "only exceptions" to the physical delivery rule, and we declined to consider the plaintiffs' affidavits in ruling as a matter of law that the plaintiffs had failed to satisfy either of the statutory exceptions to the physical delivery rule. *Schentur,* 1993 WL 330640, at *3-4. While *Schentur* is not binding here, we concur in the panel's determination in that case that *Miller* applies equally to late-delivered and never-delivered claims.

Finally, taking a somewhat different tack, the Stockers suggest that their proffer of extrinsic evidence is not necessarily inconsistent with *Miller*'s holding that § 7502 states the only two exceptions to the physical delivery rule. In particular, the Stockers maintain that nothing in *Miller* prevents them from satisfying the "postmark" requirement of § 7502(a)(1) circumstantially through evidence of timely mailing, in lieu of direct evidence of the postmark date stamped on the envelope in which they mailed their amended 2003 return. In effect, the Stockers invite us to substitute the evidence of the October 15, 2007 mailing of their return for the statutory recognition of a postmark date as an acceptable proxy for the date of delivery.

We once again conclude that *Miller* forecloses this proposed method of proof. In that case, as here, the plaintiff taxpayer was unable to produce the evidence called for under the statutory "postmark" exception — namely, proof of "the date of the United States postmark stamped on the cover" of the envelope or package in which the plaintiff taxpayer mailed his refund claim. 26 U.S.C. § 7502(a)(1). To be sure, the **reasons** for this absence of proof differ in the two cases — the mailing in *Miller* was never received, while the envelope containing the Stockers' return was lost or destroyed. Yet, as explained earlier, we see no principled basis for concluding that § 7502(a)(1) confers upon taxpayers whose claims are delivered late additional avenues of proof that, under *Miller,* are unavailable to those whose claims are never received. Indeed, we declined to allow such an avenue of proof in *Schentur* — a case where, as here, the IRS failed to preserve the envelopes in which the plaintiffs mailed their tax returns — and instead found that the timeliness of the plaintiffs' tax filings should be determined "without

looking to the affidavits" in which the plaintiffs sought to establish the date of mailing. 1993 WL 330640, at *4 (footnote omitted).

In any event, it bears emphasis that the extrinsic evidence put forward by the Stockers does not purport to establish the fact of significance under § 7502(a)(1) — namely, the "date of the United States postmark" on their amended 2003 return — but instead is directed at the separate factual question of when they presented this return to the post office for mailing. As the Eighth Circuit has observed, "in section 7502 Congress dealt with issues of proof, and determined that a postmark is evidence verifiable beyond any self-serving testimony of a taxpayer who claims that a document was timely mailed." *Estate of Wood v. Comm'r,* 909 F.2d 1155, 1161 (8th Cir. 1990). Thus, "[t]he act of mailing is not significant for purposes of the statute but placement of a postmark is." *Id.* Consequently, we affirm the district court's finding that the Stockers' extrinsic evidence had no role to play in determining whether they could satisfy either of § 7502's two exclusive exceptions to the physical delivery rule, and we further affirm the lower court's ruling that neither of these exceptions is available here to establish the timely filing of the Stockers' amended 2003 federal tax return.

**C.      The District Court Did Not Abuse Its Discretion in Declining to Draw an Adverse Inference of Timely Filing as a Spoliation Sanction for the Government's Failure to Preserve the Envelope in Which the Stockers Mailed Their Amended 2003 Tax Return.**

Apart from challenging the district court's refusal to consider the extrinsic evidence that they mailed their amended 2003 federal tax return at the October 15, 2007 deadline, the Stockers also take issue with the district court's failure to impose spoliation sanctions against the Government arising from the IRS's failure to retain the envelope in which they sent this return. More specifically, the Stockers sought an inference that this lost or destroyed envelope bore a postmark date of October 15, 2007, but the district court declined without comment to draw such an adverse inference against the Government, or to otherwise impose any sort of spoliation sanctions based on the IRS's loss or destruction of this envelope. We review the district court's failure to impose the requested spoliation sanctions for an abuse of discretion, *see Beaven v. U.S. Dep't of*

*Justice,* 622 F.3d 540, 553 (6th Cir. 2010), and we conclude that the court acted within its discretion when it declined to impose such sanctions here.

As we recently explained, a "party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to [a] party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* (internal quotation marks and citations omitted). The requisite "culpable state of mind" may be established through a "showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it," but even negligent conduct may suffice to warrant spoliation sanctions under the appropriate circumstances. *Id.* at 554 (internal quotation marks, alteration, and citations omitted).

Turning to the first of these factors, the Stockers point to a provision in an IRS internal policy manual that seemingly requires the agency to retain the envelopes in which amended returns are received. In their view, this internal policy gave rise to an obligation to preserve the postmarked envelope in which they sent their amended 2003 return, and the Government does not contend otherwise. Thus, we agree that the first factor cited in *Beaven* has been established here.

We conclude, however, that the Stockers have not demonstrated that the IRS acted with a sufficiently culpable state of mind to warrant an adverse inference of a timely postmark date. We explained in *Beaven* that "an adverse inference for evidence spoliation is appropriate" if the party with control over the evidence "knew the evidence was relevant to some issue at trial" or to "future litigation," but nonetheless engaged in culpable conduct that "resulted in its loss or destruction." *Id.* at 553 (internal quotation marks and citations omitted). The Stockers contend that the IRS knew or should have known that the evidence at issue here could prove relevant to future litigation, given (i) the legal significance that § 7502(a)(1) confers upon postmarks stamped on envelopes, and (ii) the recognition in the IRS's internal policy manual that envelopes

containing amended returns should be retained and that postmark dates are used to determine timely filing. The Government, on the other hand, argues that the IRS reasonably could have failed to perceive the relevance of the envelope to future litigation, where (i) according to the agency's records, the postmark date on the envelope was October 19, 2007, four days after the applicable deadline, and (ii) the Stockers' use of certified mail to send their return gave rise to the reasonable assumption that they had obtained a date-stamped receipt at the post office that could establish timely filing under § 7502(c).

On balance, we find that these considerations would warrant the adverse inference sought by the Stockers only if there were evidence that the IRS acted with a degree of culpability beyond mere negligence. To be sure, we have recognized that spoliation sanctions may properly be imposed even for lesser degrees of fault such as negligence. *See Beaven,* 622 F.3d at 554. Yet, the choice of an appropriate sanction should be linked to the degree of culpability, with more severe sanctions reserved for the knowing or intentional destruction of material evidence. *Id.* at 553-54. Here, the record discloses no culpable conduct beyond the negligent failure to preserve an envelope in accordance with internal agency regulations. Moreover, as we noted earlier, the extrinsic evidence produced by the Stockers, even if fully credited, does not definitively establish that the IRS employee who received and opened the Stockers' amended 2003 return incorrectly recorded the postmark date on the envelope as October 19, 2007. To the contrary, it is possible that this notation in the IRS record was accurate, and that the fault for the late postmark date lies with a postal worker. If so, the lost or destroyed envelope would not have aided the Stockers' cause in this litigation.

As we have observed, under the present state of the law in this Circuit, "a taxpayer who sends a document to the IRS by regular mail, as opposed to registered or certified mail, does so at his peril." *Carroll,* 71 F.3d at 1229. The Stockers recognized as much when they sent their amended 2003 federal return by certified mail, but they failed to take the necessary steps to ensure that they obtained the date-stamped receipt of certified mailing that would establish timely filing under § 7502(c). It is unfortunate,

to be sure, that the IRS did not retain the envelope that possibly could have enabled the Stockers to establish timely filing through the alternative route made available in § 7502(a)(1).  Yet, as the Government points out, a review of the case law reveals no decisions in which the IRS's failure to preserve a postmarked envelope resulted in an adverse evidentiary inference of timely mailing.  Indeed, our unpublished decision in *Schentur* featured a similar failure by the IRS to retain the postmarked envelopes in which the plaintiff taxpayers mailed their returns, but we nonetheless held that the plaintiffs' suit for a refund was time-barred.  1993 WL 330640, at *1-2, *4.  Against this backdrop, we conclude that the district court did not abuse its discretion in declining to grant an adverse inference of timely filing as a spoliation sanction for the IRS's loss or destruction of the envelope in which the Stockers mailed their amended 2003 federal tax return.

## IV.  CONCLUSION

For the reasons set forth above, we AFFIRM in all respects the district court's June 20, 2011 opinion granting the Government's motion to dismiss this suit for lack of subject matter jurisdiction.