**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0637n.06

No. 13-1926

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 15, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARK M. ZANECKI, Personal Representative of the Estate of Richard M. Zanecki, deceased, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| HEALTH ALLIANCE PLAN OF OF DETROIT, d/b/a HAP Senior Plus, and UNITED STATES OF AMERICA, | ) ) ) ) | |
| Defendants-Appellees. | ) ) | OPINION |

/

BEFORE:  MOORE and McKEAGUE, Circuit Judges; and STAFFORD, District Judge.[*]

**STAFFORD, District Judge.**  Mark M. Zanecki ("Plaintiff"), as personal representative of the estate of his father, Richard M. Zanecki ("Zanecki"), appeals the district court's dismissal of his complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we **AFFIRM.**

**I.**

In 2007, 82-year-old Zanecki died three days after doctors implanted a wingspan stent in a cerebral artery following a transient ischemic attack.  At the time of his surgery, Zanecki was an

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

enrollee in Health Alliance Plan of Detroit ("HAP"), a health maintenance organization that contracts with the United States of America to serve as a Medicare Advantage ("MA") organization under Medicare Part C.

In 2012, almost five years after his father's death, Plaintiff filed suit against HAP and the United States under the FTCA, seeking to recover damages arising out of his father's medical treatment.[1] In a 201-page pro se amended complaint, Plaintiff alleged that HAP acted negligently in authorizing payment for the wingspan stent procedure and for failing to warn Zanecki about the risks, dangers, and lack of medical effectiveness of that procedure. Plaintiff also alleged, in conclusory fashion, that HAP "is an officer or employee of the United States for FTCA purposes," but his amended complaint otherwise contained no allegations about what, if anything, the United States did that would cause the government to be either vicariously or directly responsible for Zanecki's death.

After HAP and the United States filed motions to dismiss asserting, among other things, lack of subject matter jurisdiction under the FTCA, a hearing was held before the magistrate judge. Through newly-hired counsel, Plaintiff suggested to the magistrate judge that "[t]he Federal Tort Claims Act comes into play because of the relationship [that HAP] has with the Federal government." When asked where in his amended complaint he alleged facts showing that HAP acted as the agent or instrumentality of the United States for purposes of FTCA liability, counsel conceded that his client's 201-page pro se complaint made virtually "no mention of the United States per se [and] [t]hat's because the actions were undertaken by their employee or agent, HAP." Counsel did not seek leave to file a second amended complaint on Plaintiff's behalf.

---

[1]In 2009, Plaintiff filed a negligence action in state court against Zanecki's doctors and the hospital where the surgery took place. The state-court lawsuit was settled in 2011.

Soon after the hearing, the magistrate judge issued a report recommending that Plaintiff's amended complaint be dismissed. The magistrate judge recommended dismissal of Plaintiff's claims against HAP because the FTCA does not authorize suits against any entity other than the United States. The magistrate judge recommended dismissal of Plaintiff's claims against the United States because Plaintiff failed to sufficiently plead that HAP was an agency or instrumentality of the government such that the United States would be subject to vicarious liability for HAP's actions under the FTCA. While acknowledging that Plaintiff did allege that HAP acted as an instrumentality or agent of the United States and not as an independent contractor, the magistrate judge noted that Plaintiff did "not allege how [the government] controls, or has the authority to control, the 'detailed physical performance' or the 'day-to-day' operations of HAP." *Zanecki v. Health Alliance Plan of Detroit*, No. 12–13234, 2013 WL 2626717, at *13 (E.D. Mich. June 11, 2013). Absent allegations that the government exercises such control over HAP, and given the relationship between MA organizations and the government "as gleaned from statutes, regulations, and case law describing this relationship," *id.* at *12, the magistrate judge recommended that Plaintiff's amended complaint be dismissed. Without elaboration, the United States District Court for the Eastern District of Michigan adopted the magistrate judge's report and recommendation and dismissed the case against HAP and the United States. On appeal, Plaintiff challenges only the dismissal of the United States.[2]

---

[2]Plaintiff does not challenge the determination that HAP itself is not a proper party in a FTCA case. *Mars v. Hanberry*, 752 F.2d 254, 255 (6th Cir. 1985) (explaining that "[t]he United States is the only proper party in an action pursuant to the Federal Tort Claims Act").

**II.**

We review de novo a district court's decision to grant a motion to dismiss for lack of jurisdiction based on a facial attack.[3] *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). We likewise review de novo a dismissal for failure to state a claim. *Id.* Although we accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff, the complaint must contain more than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss only if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**III.**

**A.**

Plaintiff contends that the district court erred in finding that Plaintiff failed to plead that HAP is a government agency or instrumentality such that the United States may be vicariously liable for HAP's actions under the FTCA. We find no such error.

The United States is immune from suit unless it expressly waives its sovereign immunity and consents to be sued. *Stocker v. United States*, 705 F.3d 225, 230 (6th Cir. 2013). The FTCA waives the United States's sovereign immunity for claims alleging "the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment." 28 U.S.C.A. § 1346(b)(1) (emphasis added). The FTCA defines "employee of the Government" to include "officers or employees of any federal agency . . . and persons acting on

_____

[3]The magistrate judge made clear that she treated the motions to dismiss as presenting facial attacks, stating: "[T]he Court need not, and does not, examine materials that would be improper when resolving a facial attack." *Zanecki*, 2013 WL 2626717 at *6.

behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." *Id.* at § 2671. The term "federal agency" includes "corporations primarily acting as instrumentalities or agencies of the United States, *but does not include any contractor with the United States.*" *Id.* (emphasis added).

A "critical element" in determining whether an entity is a federal agency or instrumentality, as opposed to an independent contractor, is the existence of federal authority "to control the detailed physical performance" of the entity. *United States v. Orleans*, 425 U.S. 807, 814 (1976) (internal quotation marks omitted). As explained in *Orleans*, "the question . . . is not whether the [entity] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *Id.* at 815. As explained by the Court:

> Federal funding reaches myriad areas of activity of local and state governments and activities in the private sector as well. It is inconceivable that Congress intended to have waiver of sovereign immunity follow congressional largesse and cover countless unidentifiable classes of "beneficiaries." The Federal Government in no sense controls "the detailed physical performance" of all the programs and projects it finances by gifts, grants, contracts, or loans.

*Id.* at 816.

Here, Plaintiff altogether failed to allege in his amended complaint how the United States controls the "detailed physical performance" or the "day-to-day operations" of HAP. Moreover, there is nothing in the Medicare statute, regulations, or legislative history to suggest that the United States, through the Centers for Medicare and Medicaid Services ("CMS"), has the *authority* to manage the "detailed physical performance" or control the "day-to-day operations" of an MA

organization such as HAP.[4]  Indeed, the legislative history reveals that, when enacting Medicare Part

C, Congress deliberately created a mechanism by which CMS may contract with private entities to

shift the risk and operation of a portion of the Medicare program from the government to such

private entities, thus enabling "beneficiaries to have access to a wide array of private health plan

choices in addition to traditional fee-for-service Medicare" while also enabling "the Medicare

program to utilize innovations that have helped the private market contain costs and expand health

care delivery options."  *See* H.R. Rep. No. 105–149, at 1251 (1997).[5]

Plaintiff has not cited, nor have we found, any statutory or regulatory provision or case

authority providing that an MA organization acts on behalf of the United States when that

organization provides Medicare Part C benefits to beneficiaries pursuant to a contract with CMS.

The situation is quite different for Medicare Parts A and B, which are typically administered by

Medicare Administrative Contractors ("MACs") (formerly known as "fiscal intermediaries" for Part

---

[4]In a section entitled entitled "Noninterference," MA regulations provide that CMS "may not require any MA organization to contract with a particular hospital, physician, or other entity or individual to furnish items and services," and "may not require a particular price structure for payment under such a contract."  42 C.F.R. § 422.256(a)(2).

[5]In *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004), the Fifth Circuit Court of Appeals described Part C as follows:

> Under Part C . . . CMS pays [MA] organizations fixed monthly payments in advance, regardless of the value of the services actually provided to the [Part C] beneficiaries. In return, the *[MA] organization assumes responsibility and full financial risk for providing and arranging healthcare services for [Part C] beneficiaries,* sometimes contracting health care providers to furnish medical services to those beneficiaries. Such contracts between [MA] organizations and providers are subject to very few restrictions; generally, the parties may negotiate their own terms.  Thus, under Part C, the government transfers the risk of providing care for [Part C] enrollees to the [MA] organization.

*Id.* at 558–59 (emphasis added).

A and "carriers" for Part B) pursuant to contracts with CMS.[6] *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 706 n.2 (10th Cir. 2006). The Medicare regulations for Parts A and B specifically provide that MACs "act on behalf of CMS in carrying out certain administrative responsibilities that the law imposes." 42 C.F.R. § 421.5(b). Courts, moreover, have long recognized that MACs act as the government's agents. *See, e.g.*, *Schweiker v. McClure*, 456 U.S. 188, 190 (1982) (noting that "carriers act as the Secretary's agents"); *Edgewater Hosp., Inc. v. Bowen*, 857 F.2d 1123, 1125 (7th Cir. 1988) (noting that intermediaries function as the Secretary's agents). Under Medicare Part C, however, there is no counterpart to § 421.5(b), and there is no similar case law authority.

In his brief on appeal, Plaintiff does not cite to specific allegations in his amended complaint that might bolster his argument that the district court erred in dismissing his FTCA claims against the United States. He, instead, contends that Medicare's "extraordinarily detailed statutory and regulatory requirements," combined with CMS's broad oversight of "nearly every aspect of HAP's performance," are enough to qualify HAP as an agency or instrumentality of the United States. Courts, however, have consistently rejected similar contentions. *See*, *e.g.*, *Orleans*, 425 U.S. at 816–18 (holding that a community action agency did not act as a federal agent or instrumentality for purposes of the FTCA even though the agency was organized under federal regulations and was heavily funded by the federal government); *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1184 (9th Cir. 2004) (noting that "[n]either federal regulation nor federal funding, even extensive or exclusive federal funding, is sufficient to make an entity a federal agency"); *Leone v. United States*, 910 F.2d

---

[6]MACs may determine the amount of payments to be made to providers, make those payments using government funds, communicate with providers, provide consultative services, and perform other functions "necessary to carry out the purposes" of the Medicare program. 42 U.S.C. § 1395kk–1(a)(4).

46, 49–51 (2d Cir. 1990) (holding that physicians designated by the Federal Aviation Administration as aviation medical examiners were not government agents for FTCA purposes even though the physicians were subject to the Federal Air Surgeon's general supervision and were required to comply with detailed federal regulations and apply federal standards). Here, consistent with *Orleans* and its progeny, we are unpersuaded that HAP is, *ipso facto*, an instrumentality of the United States by virtue of Medicare's detailed statutory and regulatory provisions.

In sum, we conclude that the district court correctly found that Plaintiff failed to sufficiently plead that HAP is an agency or instrumentality of the government such that the government may be subjected to vicarious liability under the FTCA for HAP's actions.

**B.**

Plaintiff also contends—for the first time on appeal—that the United States remains liable under the FTCA for its own negligence, regardless of whether HAP is deemed an agent or instrumentality of the government. The United States maintains that Plaintiff has waived this direct-negligence claim.

Generally, "an argument not raised before the district court is waived on appeal to this Court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). Here, Plaintiff is asserting on appeal a direct-negligence claim against the United States that was not included in his amended complaint, that was not presented to the magistrate judge in response to motions to dismiss, that was not addressed in Plaintiff's objections to the magistrate judge's report and recommendation, and that was not before the district court when the case was dismissed. We accordingly find that Plaintiff has waived the direct-negligence claim that he raises on appeal.

**IV.**

For the foregoing reasons, we **AFFIRM** the dismissal of Plaintiff's FTCA claims against the United States.